37831. SLATER *v.* RUSSELL.

DECIDED OCTOBER 14, 1959—REHEARING DENIED OCTOBER 22, 1959 AND OCTOBER 28, 1959.

*T. J. Long, Ben Weinberg, Jr.,* for plaintiff in error.
*Turner Paschal,* contra.

NICHOLS, Judge. ■ The defendant's amended motion for new trial assigns error, as to each count of the petition separately, on the refusal of the trial court to rule out certain testimony of the defendant adduced while the plaintiff's attorney was cross-examining the defendant, as well as on the failure of the trial court to declare a mistrial or reprimand the plaintiff's attorney for eliciting such testimony.

The defendant had testified, in substance, that she did not feel as though the plaintiff was looking after her and her children, in a divorce action, that he was not sympathetic with

her, and that that was what prompted her to have him discharged from representing her in a divorce action against her husband, that another attorney who represented her mother drafted the letter notifying the plaintiff of his discharge, that this same attorney represented her a few months prior to the trial in a juvenile court hearing which concerned the custody of her children, that at the time the plaintiff was representing her she had custody of her children: Question: "Do you have them now?" Answer: "No, I don't. They are in the custody of the courts." The defendant's attorney objected to the quoted question and answer as follows: "The objection is that that's wholly irrelevant and inadmissible as to any issue in this case."

An objection that evidence is illegal, immaterial, irrelevant, prejudicial, inadmissible, and a conclusion, without showing wherein such evidence is so characterized is insufficient and will not be considered. See *Deen* v. *Baxley State Bank,* 62 *Ga. App.* 536, 537 (8 S. E. 2d 689), and citations. "Grounds of objection to evidence raised for the first time in the amended motion for a new trial cannot be considered. *Middleton* v. *Waters,* 205 *Ga.* 847, 854 (55 S. E. 2d 359). Accordingly, an assignment of error on the admission of evidence will be considered only in the light of the specific objection made at the time it is admitted. An objection to evidence must inform the court specifically upon what ground the evidence is inadmissible and a mere general objection without pointing out wherein or how the evidence violates some recognized rule of the law of evidence is too general to raise any question for decision by the trial judge. *Barrett* v. *City of Brunswick,* 56 *Ga. App.* 575, 576 (193 S. E. 450); *McBride* v. *Johns,* 73 *Ga. App.* 444, 445 (36 S. E. 2d 822); *West Lumber Co.* v. *Schuck,* 85 *Ga. App.* 385, 388 (69 S. E. 2d 577); *Freedman* v. *Petty,* 93 *Ga. App.* 590, 591 (92 S. E. 2d 588)." *Georgia Power Co.* v. *Hendricks,* 97 *Ga. App.* 369, 370 (103 S. E. 2d 601). Since the objection made to the evidence was insufficient to require a ruling by the court, it necessarily follows that the trial court did not err in failing to reprimand counsel for the plaintiff for asking the quoted question.

The defendant's motion for a mistrial, made after the two foregoing motions were made, was more specific and was as follows:

"Now, the third proposition is, I move for a mistrial upon the ground that, since that evidence is wholly inadmissible for any purpose, that it's prejudicial, that the fact that this lady, the custody of these children have been taken away from this lady carries with it an implication of moral depravity which could well affect her position before this jury and render a jury incapable of treating her impartially as would be the case if that testimony had not been brought out before this jury."

Assuming but not deciding that evidence that the children had been *taken* away from the defendant would be prejudicial to the defendant, it is necessary to determine if such evidence, as it was presented to the jury was ground for a mistrial. The defendant was asked, not if her children had been *taken* away from her by court order, but, did she at that time have custody of the children. This question she answered, "No, I don't." Without any explanation this would not have implied that the custody of the children had been taken away from her by the court, for it would be just as likely that under an agreement with her husband he had custody of the children at that particular time. Therefore, the real question is, again assuming but still not deciding that evidence that the defendant's children had been taken away from her by the court was prejudicial so as to require a mistrial, whether where a party volunteers prejudicial information such party is entitled to a mistrial. In a case where the plaintiff was seeking to recover damages from the defendant this court held, in an opinion written by Judge Quillian, that: "Where testimony showing that the defendants were insured was voluntarily given by the defendants' witness who was defendants' agent assisting in the conduct of the case and its alter ego, on cross-examination in answer to a question which was not patently a deliberate attempt to elicit such information, the refusal of the trial court to grant a mistrial on that account was not error." _Steinmetz_ v. *Chambley*, 90 *Ga. App.* 519 (5) (83 S. E. 2d 318). No rule is better settled than that which declares that a mistrial must be granted where, in a damage action, the jury is informed that the defendant is protected by insurance. Yet, there are exceptions to such rule, and one of these exceptions is where the information is given to the jury volun-

tarily by the defendant. *Steinmetz* v. *Chambley,* supra. "A party will not be heard to complain of an error which he has invited." *Norris* v. *State,* 40 *Ga. App.* 232 (149 S. E. 158) ; *George A. Rheman Co.* v. *May,* 71 *Ga. App.* 651, 655 (31 S. E. 2d 738). The defendant invited the harm, if any, by voluntarily giving to the jury the information that her children were in the custody of the court. Accordingly, the trial court did not err in denying her motion for mistrial because such information was conveyed to the jury.

■ The sole remaining special ground of the amended motion assigns error on an excerpt from the charge wherein the jury was instructed that as to count 3 of the petition, if it found for the plaintiff on such count, the form of its verdict would be: "We, the jury, find for the plaintiff blank dollars, and that can be any amount from one dollar up to $22,500, that being the maximum amount sued for under count 3 by the plaintiff, and you fill in the amount."

The basis of this special ground is actually the same as a contention that the verdict in the amount found on this count of the petition was not authorized by the evidence since the contention is that inasmuch as the evidence did not support a verdict for $22,500 the charge authorizing the jury to find up to $22,500 was error.

Code § 105-2009 provides in part, that damages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered. " 'A plaintiff who seeks reparation in damages to his business, from a breach of contract, is limited to the recovery of damages which are the natural and material consequence of the act from which the damage flows. Loss of prospective profits is ordinarily too remote for recovery. The profits of a commercial business are dependent on so many hazards and chances, that unless the anticipated profits are capable of ascertainment, and the loss of them traceable directly to the defendant's wrongful act, they are too speculative to afford a basis for the computation of damages.' *Cooper* v. *National Fertilizer Co.,* 132 *Ga.* 529, 535 (64 S. E. 650). 'The general rule is that the expected profits of a commercial business are too uncertain, speculative, and remote to

permit a recovery for their loss.' *Palmer* v. *Atlantic Ice & Coal Corp.*, 178 *Ga.* 405 (2) (173 S. E. 424, 92 A. L. R. 176)." *Ga. Grain Growers Assn.* v. *Craven*, 95 *Ga. App.* 741, 747 (98 S. E. 2d 633), and citations.

Code § 105-2010 provides an exception to the above rule, to wit: "If, however, the tort is committed, or the contract broken, or the duty omitted, with a knowledge and for the purpose of depriving the party injured of such benefits as are specified in the preceding section, then the remote damages are made, by such knowledge and intent, a proper subject for consideration by the jury." In the present case the defendant testified that her purpose in discharging the plaintiff as her attorney was to terminate any further fees that might go the plaintiff under the contract with him. The defendant's motive in breaching the contract with the plaintiff was to prohibit him from recovering fees which he would earn under the contract and under the above quoted Code section the mere fact that such fees are contingent upon the profits of a going business concern does not prohibit the plaintiff from recovering *damages* for the breach of the contract, the *damages* being what the contract is worth to him.

The evidence disclosed that from August 1, 1955, through January 31, 1959, the average annual earnings of Dodd Distributing Company were less than $130,000 and that the defendant's share thereof would amount to less than $43,333.33 or one-third of the net profits of the corporation, and that under the contract between the plaintiff and the defendant the plaintiff would have received ten per cent of the latter amount or less than $4,333.33 per year for three years or less than $13,000 if the profits for the years covered by the above figures had been the same as those years covered by the contract. This is the most, under the evidence, that the contract would have been worth to the plaintiff. The company, though showing an increase in sales, from the evidence as to net profit, has since the end of the fiscal year ending July 31, 1956, each year shown a smaller profit than the preceding year. The maximum amount that the plaintiff would have been entitled to receive in any one year under the evidence would have been $5,050.86 and the amount of the verdict, even as reduced by the plaintiff voluntarily writing off a

part thereof, allowed the plaintiff an average of $5,433.33 per year. The amount of the verdict, even as reduced, was not authorized by the evidence and a new trial must be granted as to count 3 of the petition for such reason. It necessarily follows that the charge complained of, quoted above, which authorized the jury to find for the plaintiff up to the amount sued for without limiting the amount of recovery to the amount of *damages* sustained was error.

■ The contention is made that the trial court erred in failing to grant the defendant's motion for a judgment non obstante veredicto because the contract was without consideration to the defendant. This contention is without merit for, while the defendant had no actual control over her estate while it was in the hands of the trustee, a person may always employ an attorney or business adviser to see that the trustee stays within the law and does not waste or dissipate the assets held in trust. While the trustee had, under the will, full power to administer the trust, still the defendant had the right at least to know what was being done and to have an attorney determine whether such actions were authorized by law so that in the event the trustee went beyond its trust, or was guilty of waste or dissipation, immediate action could be taken. The contract was not without consideration to the defendant and there was no evidence to support the contention made in the defendant's answer that the contract was procured by fraud. The trial court did not err in denying the defendant's motion for a judgment non obstante veredicto as to count 3 of the petition.

■ The evidence supported the verdict as to counts 1 and 2 of the petition and no error of law appearing as to such counts the judgment denying the motion for new trial as to such counts, based on the usual general grounds, was not error for any reason assigned.

*Judgments affirmed in part and reversed in part. Felton, C. J., and Quillian, J., concur.*